IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RAUL CORTES-PONCE (01),<br><br>    Defendant. | Case No. 13-40078-01-DDC |

### MEMORANDUM AND ORDER

Defendant Raul Cortes-Ponce, proceeding pro se,[1] asks for a reduced sentence. His motion invokes compassionate release under 18 U.S.C. § 3582(c)(1)(A). Doc. 89. The court rejects Mr. Cortes-Ponce's request. It explains why, below.

**I.     Background**

In June 2014, Mr. Cortes-Ponce pleaded guilty to conspiracy to possess with intent to distribute more than 500 grams of methamphetamine. Doc. 41 (Change of Plea Minutes); Doc. 54 at 4 (Am. PSR ¶ 9). The Amended Presentence Investigation Report suggested two sentencing enhancements—one for the use of fear to secure another's participation and one for Mr. Cortes-Ponce's role as organizer or leader of at least one person in the conspiracy. Doc. 54 at 9 (Am. PSR ¶¶ 39, 41). It also suggested offense level decreases because Mr. Cortes-Ponce accepted responsibility and assisted authorities by timely notifying them of his intent to plead guilty. *Id.* (Am. PSR ¶¶ 45–46). Based on a total offense level of 39 and a criminal history

---

[1]     Mr. Cortes-Ponce filed his motion pro se. People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

category of II, *id.* at 9, 10 (Am. PSR ¶¶ 47, 51), Mr. Cortes-Ponce's guideline imprisonment range was 292–365 months, *id.* at 13 (Am. PSR ¶ 72). The court sentenced Mr. Cortes-Ponce to 192 months imprisonment and five years supervised release. Doc. 57 at 2, 3 (Judgment). Mr. Cortes-Ponce's projected release date is February 18, 2027. *See* Federal Bureau of Prisons, *Inmate Locator*, Raul Cortes-Ponce (Reg. No. 23529-031), https://www.bop.gov/inmateloc/ (last visited Dec. 17, 2025). Now, he seeks a reduced sentence.

The court begins with the governing legal standard.

## II.      Legal Standard

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed; but the rule of finality is subject to a few narrow exceptions.'" *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). Compassionate release under 18 U.S.C. § 3582(c)(1) is one of those exceptions. *Id.* When it passed the First Step Act in 2018, Congress amended § 3582(c)(1) to allow a defendant, not just the Bureau of Prisons, to move for a sentence reduction—but only "after the defendant has fully exhausted all administrative rights" with BOP. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Eccleston*, 543 F. Supp. 3d 1092, 1125 (D.N.M. June 10, 2021) (recounting history of First Step Act). Exhaustion aside, the court may grant a defendant's motion for compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the 18 U.S.C. § 3553(a) factors favor a reduced sentence. *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

## III.     Analysis

The court first evaluates whether Mr. Cortes-Ponce has established extraordinary and compelling reasons for his release. He has not. It then evaluates whether the § 3553(a) factors

favor compassionate release. They do not. The court thus can't grant Mr. Cortes-Ponce the sentence reduction he requests.

      A.      **Extraordinary & Compelling Reasons**

The Sentencing Commission has issued a policy statement describing extraordinary and compelling circumstances that warrant a reduced sentence. The policy statement defines six extraordinary and compelling reasons for release:

- Medical circumstances;
- Advanced age;
- Family circumstances;
- Victim of abuse;
- Other reasons; and
- Unusually long sentence.

U.S.S.G. § 1B1.13(b).

Of these six possibilities, Mr. Cortes-Ponce invokes two. He argues that he received an unusually long sentence by pointing to two sentencing disparities. *First*, he contends that the United States Sentencing Commission recently adopted an amendment to cap the offense level of the drug tables. Doc. 89 at 4. And he asserts that this change in law results in a disparity between the sentence he would receive now vis-à-vis the sentence he received more than a decade ago. *Id. Second*, he argues that a "great" sentencing disparity arises between citizens and non-citizens, such that the two groups don't "get the same punishment and reductions[.]" *Id.* That disparity, he contends, arose when the First Step Act changed the law. *Id. Finally*, Mr. Cortes-Ponce employs the "other reasons" catch-all to assert that "his rehabilitation efforts and good conduct" qualify as an extraordinary and compelling reason. *Id.* at 5.

3

The court tackles each argument, in turn, below.

### 1.     Unusually Long Sentence—Guidelines Amendment

Mr. Cortes-Ponce first argues that he received an unusually long sentence because a change of law means that now "he would receive a lower sentence than the one imposed on him." *Id.* at 4.  The Guidelines provide that an "unusually long sentence" may present extraordinary and compelling reasons for compassionate release under certain circumstances. U.S.S.G. § 1B1.13(b)(6).  The Guidelines allow the court to consider changes in the law (other than non-retroactive Guidelines amendments) if a defendant (1) received an unusually long sentence and (2) has served at least ten years of that sentence.  *Id.*  The court may consider such a change in the law only if the change "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]"  *Id.*

Here, Mr. Cortes-Ponce clears the second hurdle.  He has served more than 10 years of his sentence.  But Mr. Cortes-Ponce doesn't identify any change in law that would apply to him. He claims that the Sentencing Commission "has adopted an amendment to cap the offense level of drug tables to 32 instead of 38 for certain defendants." Doc. 89 at 4.  And he asserts that the Sentencing Commission adopted that amendment in April 2025.  *Id.*  The court presumes Mr. Cortes-Ponce refers to the Guidelines Manual amendments the Sentencing Commission submitted to Congress on April 30, 2025.  One of those amendments—Amendment 833—could reduce a defendant's offense level specified in the Drug Quantity Table from a 38 to a 32, as Mr. Cortes-Ponce suggests.  *See* United States Sentencing Commission, *Amendment 833, Part A, Subpart 1*, https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/appendixc-detail?APP_AMEND_ID=833 (last visited Dec. 19, 2025); *see also* United States Sentencing Commission, *Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-

4

amendments/202505_Amendments.pdf (last visited Dec. 19, 2025) (explaining that the amendment to the mitigating-role provisions at U.S.S.G. § 2D1.1(a)(5) "sets a mitigating role cap at level 32 if the defendant receives an adjustment under § 3B1.2 and has a base offense level above 34.").

Mr. Cortes-Ponce satisfies one part of Amendment 833's requirements—he has a base offense level above 34. *See* Doc. 54 at 9 (Am. PSR ¶ 38) (identifying base offense level as 36). But Amendment 833 only operates where a mitigating-role adjustment applies under U.S.S.G § 3B1.2. A sentencing court evaluates whether to apply a mitigating-role adjustment "by comparing [a] defendant's role in the offense to those of other participants." *United States v. Berryhill*, 140 F.4th 1287, 1297 (10th Cir. 2025). That is, "the crux of a mitigating-role adjustment is the defendant's relative culpability." *Id.* at 1298 (quotation cleaned up). So, for example, a mitigating-role adjustment may apply to "'a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks'" or "'a defendant . . . who is less culpable than *most other participants* in the criminal activity, but whose role could not be described as minimal.'" *Id.* at 1294 (emphasis in original) (first quoting U.S.S.G. § 3B1.2 cmt. n.3(C); and then quoting *id.* § 3B1.2 cmt. n.5).

Here, Mr. Cortes-Ponce didn't qualify for a mitigating-role adjustment. *See* Doc. 54 at 9 (Am. PSR ¶¶ 37–47). The Amended PSR compared his role in the offense to those of the other participants and suggested the opposite adjustment—an *aggravating*-role adjustment under U.S.S.G. § 3B1.1(a). *See id.* (Am. PSR ¶ 41). And so, Amendment 833 doesn't apply to him. In short, the change of law Mr. Cortes-Ponce identified doesn't create any sentencing disparity for the court to consider. The court thus rejects Mr. Cortes-Ponce's first iteration of his "unusually long sentence" theory.

5

Mr. Cortes-Ponce asserts an alternative theory under which his sentence is unusually long vis-à-vis others who performed similar criminal conduct. The court addresses that alternative theory, next.

### 2.     Unusually Long Sentence—First Step Act

Mr. Cortes-Ponce next contends that citizenship—or the lack of it—fuels a sentencing disparity for similar criminal conduct. He asserts that—even where an alien defendant is subject to a similar sentence—the non-citizen doesn't qualify "for some advantages available to the citizen offender" under the First Step Act. Doc. 89 at 3 (quotation cleaned up). Mr. Cortes-Ponce provides an example:

> The citizen offender . . . may be eligible for [a] one year reduction in his sentence upon successful completion of Federal Residential Drug and Alcohol Abuse Prevention Program (RDAP). Whereas an alien defendant, though possibly eligible to participate in the [RDAP] program, nonetheless is ineligible for a sentence reduction.

*Id.* (quotation cleaned up). Mr. Cortes-Ponce thus argues that the "change of law that the First Step Act brought should also apply to non-citizens" and, because it doesn't, a sentencing disparity results. *Id.* at 4. The government concedes the premise of this argument, *i.e.*, that "[i]nmates who are the subject of a final order of removal under immigration law are statutorily ineligible to apply for earned time credits." Doc. 91 at 10 n.2. But it contends that a compassionate release motion under § 3582(c)(1) "is not a proper vehicle to challenge BOP policy relative to inmates who are subject to an immigration detainer." *Id.* at 9–10.

Our court has considered similar citizenship-based arguments and repeatedly concluded that deportable alien status—even where it deprives a defendant of eligibility for BOP benefits—doesn't qualify as an extraordinary and compelling circumstance. *See United States v. Medina-Rodriguez*, No. 20-20021-JAR, 2025 WL 1114195, at *4 (D. Kan. Apr. 15, 2025) (concluding argument that "status as a deportable alien has precluded [defendant] from receiving good-time

6

credit" doesn't suffice as "an extraordinary and compelling reason for compassionate release"); *United States v. Orduno-Ramirez*, No. 14-20096-JAR-07, 2024 WL 4948886, at *3 (D. Kan. Dec. 3, 2024) (finding status as deportable alien precluding benefits, including eligibility for earlier release, "a generalized complaint" that doesn't "constitute an extraordinary and compelling reason for compassionate release"); *United States v. Urias-Avilez*, No. 15-10152-1-JWB, 2022 WL 1754090, at *2 n.4 (D. Kan. May 31, 2022) (determining that "defendant's status as a deportable alien" is not extraordinary-and-compelling circumstance even where it's "likely to cause a fortuitous increase in the severity of his sentence" (quotation cleaned up)).

Courts in other districts have reached the same conclusion. *United States v. Galaviz*, No. 12-CR-125-19 (CKK), 2023 WL 8170998, at *4 (D.D.C. Nov. 24, 2023) (finding compassionate release's extraordinary-and-compelling exception unwarranted where defendant's "status as a deportable alien makes him ineligible for benefits . . . including the ability to earn First Step Act credits toward a reduction of his sentence"); *United States v. Santillan*, No. 18-CR-00048-KDB-DSC-14, 2023 WL 4002526, at *2 (W.D.N.C. June 14, 2023) (explaining that deportable alien status constitutes "generalized complaint applicable to presumably a great many inmates and is not 'extraordinary,' nor is it a compelling reason for a reduction in sentence").

What's more, the government is right: a defendant must raise claims affecting execution of his custody under § 2241, not § 3582(c)(1). In *United States v. Mobarekeh*, our Circuit affirmed where the district court construed defendant's "Petition for a Sentence Reduction" as a § 2241 application. 707 F. App'x 561, 562 (10th Cir. 2017). There, defendant sought admission into RDAP "because those who complete[d] it c[ould] get a sentence reduction from the BOP." *Id.* The Circuit concluded that the "decision to deny [defendant] admission into the RDAP is . . . squarely a prison matter potentially affecting the length of his sentence[.]" *Id.* And

7

defendant's petition "is therefore properly construed as a § 2241 application." *Id.* That is, where "'a prisoner seeks to challenge certain matters that occur at prison . . . affecting the fact or duration of the prisoner's custody, that claim must be raised in a § 2241 application[.]'" *Id.* (quoting *Hale v. Fox*, 829 F.3d 1162, 1165 n.2 (10th Cir. 2016)).

Here, treating Mr. Cortes-Ponce's deportable-alien-status argument as a § 2241 application, the court concludes it lacks jurisdiction over that claim. *See id.* ("[J]urisdiction over § 2241 applications lies only in the district court for the district of confinement[.]"). Mr. Cortes-Ponce is confined in Yazoo City Low II FCI. *See supra Inmate Locator*; *see also United States v. Muskett*, 970 F.3d 1233, 1237 n.4 (10th Cir. 2020) (taking judicial notice of inmate's status using BOP's Inmate Locator). This facility sits in the Southern District of Mississippi. *See* Federal Bureau of Prisons, *FCI Yazoo City, Low II*, https://www.bop.gov/locations/institutions/yam/ (last visited Dec. 19, 2025). Because Mr. Cortes-Ponce isn't confined in the District of Kansas, our court lacks jurisdiction over his alien-status claim.

### 3. Rehabilitation

Finally, Mr. Cortes-Ponce asserts that "his rehabilitation efforts and good conduct" qualify him "for the 'extraordinary and compelling reasons' prong." Doc. 89 at 5. He lists numerous educational programs he's completed and contends that he "has demonstrated an extraordinary rehabilitation[.]" *Id.* In response, the government calls into question Mr. Cortes-Ponce's efforts. Including an Inmate Education Data Transcript as support, the government contends that Mr. Cortes-Ponce "has participated in only 13 programs while incarcerated." Doc. 91 at 12–13. And the government highlights that Mr. Cortes-Ponce "is currently not meeting the recommendations proposed by the BOP." *Id.* at 12. Even if Mr. Cortes-Ponce's efforts were as stellar as he represents, our Circuit has made it clear. Rehabilitation alone is insufficient to

warrant compassionate release. *See United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020) (holding that district court didn't err in finding that "rehabilitation alone was not an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A)(i)." (quotation cleaned up)). And that's consistent with 28 U.S.C. § 994(t), which explicitly provides that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See also* U.S.S.G. § 1B1.13(d). Where neither of Mr. Cortes-Ponce's other arguments for extraordinary and compelling reasons survive, his rehabilitation efforts can't save his compassionate release motion.

The court thus concludes that Mr. Cortes-Ponce's conditions, taken alone and together, do not qualify as extraordinary and compelling under the statute.

**B.     § 3553(a) Factors**

Even if Mr. Cortes-Ponce had presented extraordinary and compelling reasons for his release—he hasn't—the court would deny him a reduced sentence for an independent, alternative reason: the § 3553(a) sentencing factors do not favor release. Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3553(a).

Mr. Cortes-Ponce reiterates the same arguments to demonstrate that he's earned a reduced sentence under the § 3553(a) factors—namely sentencing disparities and rehabilitation efforts. Doc. 89 at 5–6. He also self-identifies as a "changed man" who "plans to never again commit the mistake of getting involved in anything illegal." *Id.* at 6. He hopes, instead, to

9

"work hard in his native Mexico and support himself legitimately." *Id.* And, on release, he intends to "reunite with family," "seek employment[,] and live a decent life." *Id.* The court commends Mr. Cortes-Ponce's new life goals and hopes he will pursue them steadfastly. But those goals don't suffice to overcome the seriousness of his offense or the need for his sentence to provide a just punishment.

For starters, Mr. Cortes-Ponce's personal history doesn't favor release. 18 U.S.C. § 3553(a)(1). Before the Indictment in the present case, Mr. Cortes-Ponce was convicted of an earlier drug offense. Doc. 54 at 10 (Am. PSR ¶ 50). Nonetheless, he once again engaged in the same conduct, distributing large quantities of controlled substances. *Id.* at 7 (Am. PSR ¶¶ 26–28). The nature and circumstances of Mr. Cortes-Ponce's offense also don't favor a reduced sentence. 18 U.S.C. § 3553(a)(1). Mr. Cortes-Ponce occupied a leadership role in a drug trafficking conspiracy over at least one individual. Doc. 54 at 9 (Am. PSR ¶ 41). And the drug quantities he was moving throughout the conspiracy were sizeable. *Id.* at 8 (Am. PSR ¶ 32).

The court thus concludes that Mr. Cortes-Ponce's current sentence accurately reflects the seriousness of his offense. 18 U.S.C. § 3553(a)(2)(A). And a reduced sentence would not promote adequate respect for the law, nor would it provide just punishment. *Id.* The court notes that some of the § 3553(a) factors favor Mr. Cortes-Ponce, like his avowed intent to avoid further crimes and the apparent success of his correctional treatment. *See id.* § 3553(a)(2)(C), (D). But these factors simply don't outweigh the others.

In sum, even if Mr. Cortes-Ponce could demonstrate extraordinary and compelling circumstances for a reduced sentence, the court still would decline because the § 3553(a) factors don't favor a reduced sentence.

## IV.     Conclusion

The court denies Mr. Cortes-Ponce's request for compassionate release under 18 U.S.C. § 3582(c)(1).  He doesn't demonstrate extraordinary and compelling circumstances.  And the § 3553(a) don't favor compassionate release.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Motion to Reduce Sentence (Doc. 89) is denied in part and dismissed in part.

**IT IS SO ORDERED.**

**Dated this 7th day of January, 2026, at Kansas City, Kansas.**

                                                      **s/ Daniel D. Crabtree**
                                                      **Daniel D. Crabtree**
                                                      **United States District Judge**